**SCHENCK, PRICE, SMITH & KING, LLP**
Sidney A. Sayovitz (SAS-0255)
Jeffrey T. LaRosa (JTL-4026)
Thomas N. Gamarello (TNG-6128)
220 Park Avenue | P.O. Box 991
Florham Park, NJ 07932
(973) 539-1000

**JENNER & BLOCK LLP**
Howard J. Symons*
Matthew S. Hellman*
Devi M. Rao*
Samuel C. Birnbaum*
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
        *pro hac vice motions forthcoming
*Attorneys for Altice USA, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALTICE USA, INC.<br><br>                              Plaintiff,<br><br>     vs.<br><br>NEW JERSEY BOARD OF PUBLIC UTILITIES<br><br>                         and<br><br>JOSEPH L. FIORDALISO, in his official capacity as President of the New Jersey Board of Public Utilities.<br><br>                              Defendants. | Case No. ____<br><br><br>**VERIFIED COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF AND DECLARATORY RELIEF** |

Plaintiff, ALTICE USA, INC. brings this complaint for declaratory and injunctive relief against Defendants NEW JERSEY BOARD OF PUBLIC UTILITIES ("Board" or "BPU"); and JOSEPH L. FIORDALISO, in his official capacity as President of the New Jersey Board of Public Utilities.

## NATURE OF THIS ACTION

1.      Altice provides cable television, internet, and telephone services to millions of customers in twenty-one states, including New Jersey.  In this action, Altice seeks injunctive and declaratory relief to prevent the New Jersey Board of Public Utilities from unlawfully regulating the rates that Altice charges its cable customers in New Jersey.

2.      Altice maintains a nationwide policy of selling and billing customers for cable service in advance and in monthly increments (Altice's "whole-month billing policy").  Consistent with this policy, customers who contact Altice and seek to cancel service continue to receive service and are billed through the end of their monthly billing cycle.  With limited exceptions for extraordinary circumstances, Altice does not offer prorated refunds to cancelling customers.

3.      A BPU Rule, N.J.A.C. 14:18-3.8, requires cable operators in New Jersey to offer prorated refunds to customers.  In 2011, Altice's predecessor, Cablevision, sought and received from the Board a waiver from this provision.

Several years later, in 2016, Altice—relying on the Board's waiver—implemented the whole-month billing policy nationwide, including in New Jersey.

4.      In late 2018, more than two years after Altice adopted the whole-month billing policy, the Board instituted a show cause proceeding against Altice alleging that Altice's whole-month billing policy violates New Jersey law.  That proceeding culminated in a November 13, 2019 order, *In re The Alleged Failure of Altice USA, Inc. to Comply with Certain Provisions of the New Jersey Cable Television Act, N.J.S.A. 48:5a-1 et seq., and the New Jersey Administrative Code, N.J.A.C. 14:18-1.1 et seq.*, Docket No. CS18121288, Cease and Desist Order (N.J. Bd. Pub. Utils. Nov. 13, 2019) (the "Order"), attached hereto as Exhibit G, purporting to require Altice to prorate customer bills.  The Order seeks to compel Altice to cease and desist from the whole-month billing policy, and to issue refunds to customers who may have been subject to the policy.

5.      Under federal law, state and local regulation of cable rates is preempted where the Federal Communications Commission ("FCC") has determined that a cable operator faces effective competition from other video providers.  In a series of orders beginning in 2002, the FCC specifically found that Altice's predecessor Cablevision was subject to effective competition in New Jersey.  The FCC subsequently established a presumption that all cable operators in the country are subject to effective competition, a presumption that the Board has not contested.

6.     The Board's attempt to enforce N.J.A.C. 14:18-3.8's proration requirement against Altice is quintessential rate regulation and thus violates those orders.  Altice charges its consumers by the *month*; the Board seeks to compel Altice to charge its customers by the *day* by mandating a credit for each day of the month the customer does not wish to pay for service.  N.J.A.C. 14:18-3.8's proration requirement, and the Board's attempts to enforce it, are therefore preempted under the Supremacy Clause, and Altice is entitled to injunctive and declaratory relief to prevent Defendants' unlawful actions.

7.     Furthermore, the Board's Order must be set aside under New Jersey law because it is arbitrary and capricious.  The Order requiring Altice to prorate is in direct conflict with the plain text of the Board's 2011 order granting Cablevision a waiver of the proration requirement.  The Order's requirement that Altice refund affected customers is also in violation of New Jersey state law because the Board lacks statutory authority to require Altice to issue refunds.  Finally, insofar as the Order purports to amend the Board's 2011 decision, it is invalid because the Board did not follow New Jersey's rules governing amendments to BPU decisions.  Altice is therefore entitled to relief pursuant to New Jersey law as well.

## THE PARTIES

8.     Altice, USA Inc. is a corporation duly organized under Delaware law, with its principal place of business in New York.  Altice provides cable, internet,

and telephone services to millions of business and residential customers in twenty-one states, including New Jersey.

9.     Altice is a cable operator within the meaning of 47 U.S.C. § 522(5) because it provides cable service over a cable system and owns a significant interest in such cable system, as defined in 47 U.S.C. § 522(6)-(7).

10.     The New Jersey Board of Public Utilities is a subdivision of the State of New Jersey with the capacity to sue and be sued.  The Board is the state agency with authority to oversee regulated entities operating in New Jersey, including providers of cable services.

11.     The Board is a "franchising authority" within the meaning of 47 U.S.C. § 522(10) and duly authorized to grant cable franchises under New Jersey state law.

12.     The Board is a "person" for the purposes of 47 U.S.C. § 401(b).

13.     Joseph L. Fiordaliso sued in his official capacity as the President of the Board of Public Utilities.   On information and belief, Defendant Fiordaliso is responsible for enforcing the Show Cause Order and Order against Altice, and is a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over Altice's claims pursuant to 28 U.S.C. § 1331 because this case involves equitable and declaratory relief seeking to enforce

a claim of preemption under the Supremacy Clause of the United States Constitution, article VI, clause 2 and under the federal cause of action in 42 U.S.C. § 1983.

15.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the value of declaratory relief exceeds $75,000 and the action is between citizens of different states.

16.     This Court has jurisdiction over Altice's claim under New Jersey state law pursuant to 28 U.S.C. § 1367 because that claim forms part of the same case or controversy as Altice's claim of preemption under the Supremacy Clause of the United States Constitution and Altice's claim under 42 U.S.C. § 1983.

17.     This Court also has jurisdiction to hear this matter under 47 U.S.C. § 401(b), which authorizes an injured party to seek mandatory injunctive relief in the "appropriate district court of the United States" against any person who fails to obey an order of the FCC.

18.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because The Board is subject to this Court's personal jurisdiction and therefore deemed to reside in this district. *Id.* § 1391(c)(2). Additionally, Defendant Fiordaliso maintains his official office in this District.

19.     Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in this District, including Defendants' order to Altice to reverse its non-proration policy.

## FACTUAL AND LEGAL ALLEGATIONS

**I.    Federal Law Prevents the Board From Regulating Rates of Cable Services, Including the Service Provided by Altice.**

20.    The Federal Cable Communications Policy Act of 1984 ("Cable Act"), as amended, establishes a federal regulatory regime for cable operators, cable services, and cable systems. 47 U.S.C. §§ 521 *et seq.* The FCC is the federal agency with primary responsibility for implementing the Cable Act, which it has done through the adoption of regulations and policies over the 35 years since the statute was first enacted.

21.    The Cable Act requires a cable operator to obtain a franchise from a state or local franchising authority in order to provide cable service. *See* 47 U.S.C. § 541(b)(1) ("[A] cable operator may not provide cable service without a franchise."). As a result, state franchising authorities and cable providers enter into franchise agreements. Franchising authorities may exercise authority over cable operators and cable systems only in a manner consistent with the federal framework established by the Cable Act and the FCC's implementing regulations. *Id.* § 544(a). State and local regulations that are inconsistent with the federal framework are expressly preempted. *Id.* § 556(c).

22.    Of particular relevance to this case, the Cable Act governs the circumstances under which a state franchising authority, including the Board, may regulate the rates of a cable service. The Board may regulate the rates for Altice's

cable service "only to the extent provided under [47 U.S.C. § 543]."  47 U.S.C. § 543(a)(1).

23.    The Cable Act and its implementing regulations forbid franchising authorities from regulating the rates for service provided by any cable system that is subject to effective competition.  47 U.S.C. § 543(a)(2); 47 C.F.R. § 76.905(a).  New Jersey law also prohibits the Board from regulating the rates of cable television operators in areas with effective competition.  N.J.S.A. 48:5A-11(f).

24.    The Cable Act delegates to the FCC the exclusive authority to determine whether a cable system is subject to effective competition.  47 U.S.C. § 543(a)(2).

25.    In a series of orders beginning in 2002, the FCC determined that Cablevision is subject to effective competition in 162 community units in New Jersey, comprising 161 of its franchised municipalities.  *See In re The Petition of Cablevision Systems Corporation for Relief Pursuant To N.J.A.C. 14:18-16.7*, Docket No. CO11050279, Order, at 2 & n.3 (N.J. Bd. Pub. Utils. Sept. 21, 2011) ("Rule Relief Order"), attached hereto as Exhibit A.  On information and belief, the Board did not appeal the FCC's decisions, nor has it subsequently sought recertification to regulate Altice's rates.  *See* 47 C.F.R. §76.916.

26.    The FCC's specific finding that Cablevision's (now Altice's) New Jersey cable systems faces effective competition was bolstered in 2015 when the

FCC adopted by rule a rebuttable presumption that all cable systems in the United States are subject to Competing Provider Effective Competition.[1] *In re Amendment to the Commission's Rules Concerning Effective Competition*, Report and Order, 30 FCC Rcd 6574 (2015) (codified at 47 C.F.R. § 76.906).

27.    Under the rules implementing this presumption of effective competition, the FCC requires that a franchising authority affirmatively seek and receive certification before regulating the rates of any cable service within its jurisdiction.  47 C.F.R. § 76.910.

28.    To receive certification, the franchising authority must file "a written certification" stating, among other things, that "[t]he cable system in question is not subject to effective competition."   47 C.F.R. § 76.910(b)(4).   As part of the certification process, the franchising authority "bears the burden of submitting evidence rebutting the presumption that competing provider effective competition . . . exists in the franchise area."  *Id.*

29.    On information and belief, the Board has never submitted the written certification required to regulate rates under 47 C.F.R. § 76.910(b), or been certified

---

[1] The FCC has identified four types of effective competition.  47 C.F.R. § 76.905(b). Only Competing Provider Effective Competition, defined at 47 C.F.R. § 76.905(b)(2), is at issue in this case because the Board has never even attempted to rebut the presumption of effective competition before the FCC.

to regulate rates, since the FCC adopted the presumption of Competing Provider Effective Competition in 2015.

30.     As a result, Altice is a cable service operator subject to Competing Provider Effective Competition throughout New Jersey both because the FCC granted the effective competition petition of Altice's predecessor and because the FCC adopted a rebuttable presumption that all cable systems face effective competition.

31.     The Cable Act and the FCC's implementing regulations therefore forbid the Board from regulating the rates charged by Altice for cable service and expressly preempt any attempts to engage in such regulation.

## II.     The Board Grants Altice a Waiver From New Jersey's Statute Requiring Cable Operators to Prorate Monthly Bills.

32.     Section 14:18-3.8 of the New Jersey Administrative Code ("the Code" or "N.J.A.C.") permits cable television companies to bill for service in a number of ways (*e.g.*, monthly, quarterly, semi-annually or annually), allows for advanced billing, and permits cable operators to bill in accordance with reasonable terms and conditions of service, but requires companies to prorate service in the event of disconnection. N.J.A.C. 14:18-3.8.

33.     Section 14:18-16.7 of the Code provides a process through which cable operators in New Jersey can request relief from various provisions in the event the FCC has made a final finding of effective competition.

34.     In 2011, Altice's predecessor, Cablevision, sought from the Board relief from certain cable television regulations pursuant to N.J.A.C. 14:18-16.7. Among the regulations from which Cablevision sought and obtained relief was N.J.A.C. 14:18-3.8.

35.     In its September 2011 order, the Board unconditionally granted Cablevision relief from N.J.A.C. 14:18-3.8.  *See* Exhibit A.  The Board's Order did not limit its grant of relief to particular provisions within N.J.A.C. 14:18-3.8.  Rather, the Board stated: "[T]he Board **FINDS** that Cablevision has satisfied the requirements of this rule relief provision and is **HEREBY GRANTED** relief of N.J.A.C. 14:18-3.8."  Exhibit A at 7 (emphasis in original).

36.     In 2015, Cablevision and Altice sought the Board's approval for Altice to acquire control of Cablevision.  The Board approved the merger in May 2016 with a Stipulation of Settlement, part of which required Altice to abide by "*applicable customer service standards, performance standards, and service metrics as delineated under N.J.A.C. Title 14, including but not limited to Chapters 3, 10 and 18, and N.J.S.A. 48:5A, including, but not limited to, requirements related to billing practices and termination.*"  *In re the Verified Joint Petition of Altice N.V. and Cablevision Systems Corporation and Cablevision Cable Entities for Approval to Transfer Control of Cablevision Cable Entities*, Docket No. CM15111255, Order Approving Stipulation of Settlement at 11 (N.J. Bd. Pub. Utils. May 25, 2016)

("Merger Order") (emphasis added), attached hereto as Exhibit B.  N.J.S.A. 14:18-3.8 was not an "applicable" standard because the Board already had waived it for Cablevision.

### III.    Altice Adopts the Whole-Month Billing Policy.

37.    Altice has long sold and billed customers for cable service in advance and in monthly increments.  Altice does not advertise, sell, or charge for cable services in increments of less than one month.  Beginning in October 2016, and following repeated notice that exceeded legal requirements, Altice implemented the whole-month billing policy across its entire twenty-one state footprint, including New Jersey, consistent with the Board's 2011 Rule Relief Order.  Pursuant to this policy, when customers notify Altice that they intend to terminate service, terminating customers receive service through the balance of their monthly, prepaid cycle but do not receive prorated refunds (with limited exceptions for extraordinary circumstances).  Altice then terminates service at the end of the then-current billing period.

38.    Altice's whole-month billing policy is now an integral part of its rate-setting and pricing model.  The whole-month billing policy is applied uniformly across Altice's entire twenty-one-state footprint and across its cable, broadband internet, and telephone services.  This uniform system reduces the upward pressure

on rates for continuing customers by centralizing Altice's customer service and billing systems operations.

39.    Altice implemented the whole-month billing policy to bring Altice in line with its competitors, satellite providers such as DIRECTV and DISH, and internet-delivered multichannel video providers such as Amazon Prime, Hulu + LiveTV, Netflix, and SlingTV, none of which, per their terms of service, prorate their services.  None of these other providers is subject to the Board's purported proration requirement.

IV.    **The Board Issues an Order that Impermissibly Attempts to Enforce the Proration Requirement in N.J.A.C. 14:18-3.8 Against Altice and Violates New Jersey Law.**

40.    On December 18, 2018—over two years after the implementation of the policy and following substantial engagement between the Board and Altice—the Board issued an order, *In re The Alleged Failure of Altice USA, Inc. to Comply with Certain Provisions of the New Jersey Cable Television Act, N.J.S.A. 48:5a-1 et seq., and the New Jersey Administrative Code, N.J.A.C. 14:18-1.1 et seq.*, Docket No. CS18121288, Order To Show Cause (N.J. Bd. Pub. Utils. Dec. 18, 2018) ("Show Cause Order"), attached hereto as Exhibit D, requiring Altice to show cause as to why the Board should not find Altice to be in violation of the Rule Relief Order and the Merger Order and assess penalties.  Exhibit D at 3-4.  The Board asserted that

Altice violated these Orders by failing to comply with the proration requirement in N.J.A.C. 14:18-3.8.

41.    The Board's Show Cause Order was promulgated pursuant to its authority under N.J.S.A. 48:5A-9 to initiate complaints for violations of the Cable Television Act and the Board's implementing rules and regulations.  Exhibit D at 1. Pursuant to N.J.A.C. 14:18-16.8(a), the Board may impose penalties on a cable operator under N.J.S.A. 48:5A-9 only if the Board provides written notice to the operator within 90 days of becoming aware of a violation, N.J.A.C. 14:18-16.8(a), and resolves the enforcement action within 180 days of the written notice of the alleged violation, N.J.A.C. 14:18-16.8(e).

42.    For a violation of N.J.S.A. 48:5A-1 *et seq.*, the Board is authorized to seek penalties.  N.J.S.A. 48:5A-51(b).  But only in limited circumstances—for example, in the event of a service outage—may the Board require an operator to credit customers. *See* N.J.A.C. 14:18-3.5(a).

43.    Altice filed an Answer to the Show Cause Order and the New Jersey Division of Rate Counsel submitted comments, attached hereto as Exhibits E and F. Altice asserted in its Answer that the Board could not take action against Altice for failing to comply with N.J.A.C. 14:18-3.8's proration requirement because that requirement is preempted by federal law.  Altice also asserted that the Board could not take action against Altice for violating the proration requirement because the

Board granted Cablevision a waiver from N.J.A.C. 14:18-3.8 in 2011. The Board did not hold a hearing regarding the Board's orders and did not take testimony from witnesses.

44.     On November 13, 2019, more than ten months after it initiated the show cause proceeding, the Board issued a cease and desist order ("Order"), attached hereto as Exhibit G, concluding that Altice violated the Rule Relief Order, the Merger Order, and N.J.A.C. 14:18-3.8 by maintaining its whole-month billing policy.

45.     The Board ordered that Altice (1) cease its practice of not prorating consumer monthly bills; (2) make a $10,000 contribution to the Altice Advantage Internet program; (3) conduct an "audit of its consumer billing records" and report to the Board the names and account numbers of New Jersey consumers billed pursuant to the whole-month billing policy; and (4) "issue refunds to each customer" affected by the policy since the policy came into effect in 2016. Exhibit G at 8-9.

46.     On November 27, 2019, Altice filed a motion before the Board seeking a stay of the Order pending the judicial resolution of this matter. To date, the Board has not ruled on that motion.

47.     The Board's Order requiring Altice to prorate is rate regulation because it forces Altice to adopt a particular structure for its rates, contrary to N.J.S.A. 48:5A-11(f). Pursuant to its whole-month billing policy, Altice charges customers for

service by the month; the preemption requirement from N.J.A.C. 14:18-3.8 that the Order seeks to enforce would require Altice to charge customers for service by the day. Specifying the unit of service that a provider must use to charge its customers, e.g., by minute, by the day, by the month, is rate regulation. The Order is therefore preempted by federal law.

48.     The Board's Order is also inconsistent with the 2011 Rule Relief Order, which granted Cablevision, Altice's predecessor, a waiver of N.J.A.C. 14:18-3.8 in its entirety, including from the preemption requirement. The Board's Order is also inconsistent with the Merger Order. That order required Altice to abide by "applicable customer service standards" including requirements related to billing practices and termination. Exhibit B at 11. The proration requirement was not "applicable" to Cablevision at the time because the Board already had granted Cablevision relief from N.J.A.C. 14:18-3.8.

49.     The Order also is contrary to New Jersey law because the Board acted in excess of its statutory authority. The Board did not provide written notice to Altice within 90 days of the written notice of the alleged violation and the Board did not resolve the action within 180 days of providing Altice notice, as it was required to do. N.J.A.C. 14:18-16.8. The Order also contravenes New Jersey law because it requires Altice to refund money to customers. New Jersey law does not authorize the Board to compel Altice to provide refunds.

50.     The Order is not a proper modification of the 2011 Rule Relief Order. The Board must hold a hearing in order to modify, extend, or revoke a prior order. *See* N.J.A.C. § 14:1-8.4(b); N.J.S.A. § 48:2-40(e).  The Board did not hold a hearing on its Show Cause Order prior to issuing the Order.  The Board also failed to modify the 2011 Rule Relief Order within a reasonable time and with due diligence, as New Jersey Law requires.   The Board did not issue the Show Cause order until approximately two years after Altice adopted the whole-month billing policy.

**V.     Complying with the Board's Unlawful Order Would Irreparably Harm Altice.**

51.     The Board's order threatens to impose irreparable harm on Altice. Being forced to comply with an unlawful law, including a preempted law, amounts to irreparable harm where it results in non-compensable costs.

52.     First, the Order demands that Altice abandon the whole-month billing policy in New Jersey and establish an alternative billing policy for New Jersey cable customers permitting prorated refunds.  Establishing such a policy would cost Altice approximately $5 million.  Altice does not have a specific billing process for New Jersey; rather, it operates a single process across its twenty-one state footprint. Likewise, Altice has a unitary billing system for all of its services, and does not have a separate billing process for its cable services.  Thus, in order to begin prorating in New Jersey, Altice would have to extensively modify the coding of its billing system.  Those changes would be both costly and time-intensive (and would be

costly and time-intensive to later reverse).  The costs associated with these changes are described in more detail in the Declaration of Danny Holton, attached hereto as Exhibit C.

53.    Suspending the whole-month billing policy as to New Jersey cable customers also would require Altice to incur other expenses, such as modifying customer-facing communications and scripts, changing its terms of service and providing notice to customers, and retraining customer service representatives regarding the change in practices applicable to New Jersey while this matter is pending.

54.    Altice operates regional call centers that handle incoming customers' queries from across its entire national service footprint, not New Jersey-specific call centers.  Altice therefore would have to retrain all of its in-house and contracted customer service representatives—a total of over 3,500 agents in numerous locations—on a new policy for New Jersey cable customers, at a cost of approximately $200,000.

55.    Additionally, Altice could suffer reputational loss and lose customer goodwill if forced to suspend its whole-month billing policy and make corresponding changes to its terms of service, only to change it back several months later when the Board's Order is held unlawful.  Altice's standing with customers

could be further eroded if repeated changes to the policy result in cost-of-service increases.

56.     In addition to these immediate and substantial harms, forcing Altice to begin prorating for New Jersey cable customers would put Altice at an ongoing competitive disadvantage.   Maintaining a separate proration policy and billing configuration just for New Jersey cable customers would increase Altice's operating costs.  For instance, Altice conducts quality control checks on its nationwide billing system to ensure customers' bills are correct.  A parallel quality control system just for New Jersey cable customers would cost Altice approximately $200,000 per year. Those increased costs would make it more difficult for Altice to compete against other video providers.

57.     The increased costs that the proration requirement would impose are particularly harmful to Altice because many of Altice's competitors, many of whom are not subject to N.J.A.C. 14:18-3.8, sell and charge for their services as Altice does—through one rate imposed on a monthly, advance basis and without proration.

For example, Altice competitors DIRECTV,[2] DISH,[3] Amazon Prime,[4] Hulu + LiveTV,[5] Netflix,[6] and SlingTV[7] all charge in advance of providing service and do

---

[2] *DIRECTV Residential Customer Agreement*, AT&T (effective Jan. 14, 2019), https://www.att.com/legal/terms.dtv_residentialCustomerAgreement.html ("Your cancellation is effective on the last day of the billing cycle in which you cancel (exceptions may apply to certain promotional periods and must be in writing) and you will not receive a prorated credit or refund for any portion of Service cancelled (subject to applicable law).").

[3] *Residential Customer Agreement*, DISH (last updated Sept. 2019), https://www.dish.com/downloads/legal/residential-agreement.pdf ("Prices, fees and charges, once charged to your account, are non-refundable, and no credits, refunds, price reductions or any other form of compensation will be provided in connection with the cancellation or disconnection of Services.").

[4] *Amazon Prime Video Terms of Use*, Amazon.com (last updated Feb. 5, 2019), https://www.primevideo.com/help/ref=atv_hp_nd_cnt?nodeId=202095490 ("If you cancel [outside the trial period], we will refund your full membership fee only if Digital Content available as part of your video-only membership has not been accessed through your account since your latest membership charge."); *see also Amazon Prime Terms*, Amazon.com (last updated Dec. 27, 2018), https://www.amazon.com/gp/help/customer/display.html/ref=prime_pdp_prime_assist_terms?nodeId=13819201 (disallowing subscription fee refund unless the customer has not used Amazon Prime during the billing cycle).

[5] *Terms of Service*, Hulu, www.hulu.com/terms#section4 (effective Sept. 27, 2019) ("If you cancel your subscription, you will continue to have access to the Service through the end of your current Billing Period. . . . If you cancel, modify your subscription, or if your account is otherwise terminated under these Terms, you will not receive a credit, including for partially used periods of Service.").

[6] *Netflix Terms of Use*, Netflix (last updated Apr. 24, 2019), https://help.netflix.com/legal/termsofuse ("Payments are nonrefundable and there are no refunds or credits for partially used periods. Following any cancellation, however, you will continue to have access to the service through the end of your current billing period.").

[7] *Sling TV Terms of Use,* Sling TV (last updated Jan. 24, 2018), https://www.sling.com/offer-details/disclaimers/terms-of-use ("Because charges are prepaid each billing period, when you call to cancel your Subscription Services, your

not provide refunds or pro-rata credits when subscribers cancel their service during a billing cycle. It was precisely in order to be able to respond to these marketplace developments that Altice's predecessor-in-interest sought a waiver of the proration requirement. *See* Petition of Cablevision Systems Corp., *In re the Petition of Cablevision Systems Corp. for Relief Pursuant to N.J.A.C. 14:18-16.*7, No. CO11050279 (N.J. Bd. Pub. Utils. May 5, 2011), attached hereto as Exhibit H at 5.

58. More broadly, focusing on compliance with the Order will require Altice to redirect human and capital resources from other priorities in the highly-competitive market in which it operates, and at an unquantifiable expense to the business.

59. The Order's requirement that Altice issue refunds to affected customers also threatens to irreparably harm Altice. Altice estimates that nearly 60 percent of the New Jersey cable customers who cancelled service and would be entitled to refunds under the Order cancelled because they were moving. Altice does not have current contact information for these former customers and has no practical way of contacting them. Altice also has no reasonable basis for ascertaining whether customers were negatively impacted by the policy, as the month-end date could

---

subscription will continue, and you will be able to enjoy your Subscription Services through the end of, the then-current billing period . . . . Refunds are not issued for a partial billing period.").

either have accelerated or delayed their cancellation, depending on when they called, when they moved, and when their contract was up.

60.    Similarly, Altice would not be able to recover payments it makes to former customers in complying with the Order.  And if Altice were to begin prorating under the Board's order, but eventually it were determined that Altice's whole-month billing policy is lawful, then Altice would be left with no way to recoup the prorated refunds it paid in the interim period—because doing so would violate Altice's customer contracts.

61.    Many of the harms facing Altice are imminent.  The Board's Order imposes a strict timetable on Altice.  The Order requires Altice to identify all customers affected by the whole-month-billing policy and report to the Board within 30 days, and issue refunds to those customers within 60 days of the effective date of the Order.  Exhibit G at 8-9.  Altice has no reasonable way to comply with these demands without incurring considerable, and non-recoupable, expense.  Altice could not avoid irreparable harm by refusing to comply with the Order.  If Altice refused to comply, the Board could take severe punitive action against Altice.  *See* N.J.S.A. 48:5A-51 (authorizing the Board to impose substantial fines for willful violations of orders promulgated under New Jersey's Cable Act).

## FIRST CAUSE OF ACTION

**Action in Equity for Declaratory and Injunctive Relief
to Enjoin Unlawful State Action in Violation of
U.S. Constitution Article VI (the Supremacy Clause)**

62.     Altice repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

63.     The Supremacy Clause of the U.S. Constitution provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

64.     Where a local law, regulation, or ordinance conflicts with federal law, federal law must be given preemptive effect.  Congress enacted the Cable Act to establish a national policy concerning cable communications, and the Act reflects congressional intent to define the limits of local authority to regulate cable systems and minimize unnecessary regulations that would impose an undue economic burden on those systems.  47 U.S.C. § 521.  The Cable Act expressly forbids any regulation of rates of cable services except as provided for by the Cable Act.  47 U.S.C. § 543(a)(1).The Cable Act forbids any regulation—by federal, state, or franchising authority officials—of the rates of cable systems subject to effective competition. 47 U.S.C. § 543(a)(2).

65.     Altice has been found by the Federal Communications Commission to be subject to effective competition.   The Board therefore is preempted from regulating Altice's rates.

66.     The November 13, 2019 Cease and Desist Order and the proration requirement in N.J.A.C. 14:18-3.8 seek to regulate Altice's rates by dictating the structure of the rates that Altice can charge cable customers.   Regulation of the increment of time for which a company can charge subscribers for service—e.g., per minute, per day, per month—is rate regulation.   The Order and the proration requirement in N.J.A.C. 14:18-3.8 are therefore preempted by federal law.

67.     Federal courts have equitable authority to provide relief against ongoing violations of federal law.   If a plaintiff claims that federal law immunizes him from state regulatory actions, a federal court may issue equitable relief against that state regulatory action upon finding the state regulatory action preempted.

68.     Altice has no adequate remedy at law for the harms arising out of Defendants' unlawful conduct set forth above.   Being forced to comply with the Order would subject Altice to unlawful regulation of its cable service rates, interfere with Altice's implementation of its whole-month billing policy across its twenty-one-state footprint, significantly disrupt Altice's back-office operations, and cause Altice to expend millions of dollars locating and issuing refunds to former customers.   Furthermore, forcing Altice to maintain a proration policy would put it

at a competitive disadvantage versus its competitors, many of which are not required to offer prorated refunds.

69.     Altice is accordingly entitled to equitable relief, including a declaratory judgment pursuant to 28 U.S.C. § 2201(a) and an injunction pursuant to 8 U.S.C. § 2202, to prevent these harms.

## SECOND CAUSE OF ACTION

### Action for Declaratory and Injunctive Relief Under 42 U.S.C. § 1983

70.     Altice repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

71.     Section 1983 provides a federal remedy, including declaratory and injunctive relief, for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Altice is an intended beneficiary of the Cable Act's statutory scheme forbidding rate regulation under circumstances of effective competition, and the Cable Act thus gives Altice clearly established rights enforceable against governmental interference in an action under Section 1983.

72.     It is clearly established that under the Cable Act and the FCC's implementing regulations, franchising authorities may not regulate rates for a cable service absent prior certification from the FCC.

73.     The Cable Act and its implementing regulations create a federal right for cable systems subject to effective competition to be free from rate regulation by franchising authorities.  47 U.S.C. § 543(a)(1)-(2); 47 C.F.R. § 76.910.

74.     By issuing a purportedly rate-regulating Order, which interferes with Altice's rights under the Cable Act and is preempted by the Cable Act as set forth above, Defendants have at all times acted under the color of state law.  Continued threats of or attempted enforcement of these regulations, under color of state law, will frustrate Altice's rights under the Cable Act and undermine the FCC's implementation of its regulations, in violation of both the Cable Act and the Supremacy Clause of the U.S. Constitution.

75.     Altice is accordingly entitled under 42 U.S.C. § 1983 to equitable relief, including a permanent injunction, to prevent interference with its rights under federal law.

### THIRD CAUSE OF ACTION

### Action for Equitable Relief Under 47 U.S.C. § 401(b)

76.     Altice repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

77.     The Federal Communications Act provides that any person may apply to the appropriate district court of the United States for the enforcement of a regularly made and duly served order of the FCC.  47 U.S.C. § 401(b).

78.   The Cable Act and its implementing regulations forbid franchising authorities from regulating the rates for service provided by any cable system that is subject to effective competition.  47 U.S.C. § 543(a)(2); 47 C.F.R. § 76.905(a).

79.   The FCC's duly made and regularly served orders finding that Cablevision is subject to effective competition in 162 community units in New Jersey therefore prohibits the Board from regulating Altice's rates.

80.   The Board's November 13, 2019 Cease and Desist Order and the proration requirement in N.J.A.C. 14:18-3.8 seek to regulate Altice's rates by dictating the structure of the rates that Altice can charge cable customers.

81.   By seeking to enforce the proration requirement against Altice, Defendants are failing to obey the FCC's order finding that Cablevision is subject to effective competition.  *See* Exhibit H at 2 & n.3.

82.   Altice is accordingly entitled under 47 U.S.C. § 401(b) to equitable relief, including a permanent injunction, to prevent further disobedience of the FCC's regularly made and duly served orders.

**FOURTH CAUSE OF ACTION**
**Review of State Agency Action by Right Under**
**New Jersey Constitution Article VI, § 5 ¶ 4**

83.   Altice repeats and incorporates by reference the preceding paragraphs as though fully set forth herein.

84.     The New Jersey Constitution provides that a party may seek review of a state agency's action on the ground that it was unreasonably made or violates New Jersey state law.  N.J. Const. art. VI, § 5, ¶ 4; *see also* N.J. Ct. R. 2:2-3(a)(2) (a final decision of any state administrative agency is reviewable as of right).

85.     An action by a New Jersey agency must be set aside if it was arbitrary capricious, unreasonable, or not supported by substantial credible evidence in the records as a whole.  An agency action is arbitrary and capricious if it conflicts with the agency's own rules and precedents.

86.     The Board's Cease and Desist Order is arbitrary and capricious because it is based on an erroneous and unreasonable interpretation of the Board's prior action.  The 2011 Rule Relief Order granted Cablevision, Altice's predecessor, complete relief from N.J.A.C. 14:18-3.8, including that provision's proration requirement.  The Board's conclusion that the 2011 Rule Relief Order did not exempt Cablevision from the proration requirement is contrary to the plain text of the Rule Relief Order and is inconsistent with its stated purpose.

87.     The Board's Cease and Desist Order also violates New Jersey state law.  New Jersey law prohibits the Board from regulating the rates of cable television operators in areas with effective competition.  N.J.S.A. 48:5A-11(f).  Moreover, New Jersey law authorizes the Board to order cable operators to provide customer refunds only in limited circumstances—for example, in the event of a service outage.

N.J.A.C. 14:18-3.5(a). The Board lacks the power to issue refunds in other circumstances. New Jersey law does not authorize a refund in the circumstances here, so the Order's requirement that Altice refund customers exceeds the Board's statutory authority.

88. Additionally, New Jersey law requires that the Board may impose penalties on a cable operator only if it provides written notice within 90 days of becoming aware of a violation, N.J.A.C. 14:18-16.8(a), and resolves the enforcement action within 180 days of the written notice of the alleged violation, N.J.A.C. 14:18-16.8(a). The Board's Order did not meet these statutory timeframes and therefore is in violation of New Jersey law.

89. To the extent the Order purports to modify the 2011 Rule Relief Order, the Order must be set aside because it was promulgated in a manner contrary to New Jersey law. A New Jersey agency's action must be set aside if it was done without observance of procedure required by law. New Jersey law requires the Board to hold a hearing in order to modify, extend, or revoke a prior order. N.J.A.C. 14:1-8.4(b). The Board has not held a hearing. New Jersey law also requires that the Board must modify orders within a "reasonable time" and with "reasonable diligence." The Board failed to exercise reasonable diligence by waiting over seven years before modifying the Rule Relief Order in November 2019.

90.    Altice is therefore entitled to relief from the Order pursuant to Article VI of the New Jersey Constitution and New Jersey Rule 2:2-3.

**WHEREFORE**, Altice prays that this Court order appropriate relief, including, but not limited to, the following:

a)    Enter a judgment under 28 U.S.C. §§ 2201(a) and 2202 declaring that the November 13, 2019 Cease and Desist Order and the proration requirement in N.J.A.C. 14:18-3.8 are preempted by the Cable Communications Policy Act and operation of the Supremacy Clause of the United States Constitution, and therefore are void and of no force or effect.

b)    Enter a judgment under 28 U.S.C. §§ 2201(a) and 2202 declaring that the November 13, 2019 Cease and Desist Order is unlawful pursuant to New Jersey Rule 2:2-3 and Article VI of the New Jersey Constitution because it is arbitrary and capricious and conflicts with New Jersey law.

c)    Enter a preliminary injunction during the pendency of this action until a final resolution on the merits can be reached, enjoining Defendants in their official capacities from acting under color of state or local law to take any further action that would seek to enforce the November 13, 2019 Cease and Desist Order against Altice, or would seek to enforce the proration requirement in N.J.A.C. 14:18-3.8 against Altice.

d)   Enter a temporary restraining order, if necessary to preserve the status quo until a hearing on a preliminary injunction may be had, enjoining Defendants in their official capacities from acting under color of state or local law to take any further action that would seek to enforce the November 13, 2019 Cease and Desist Order against Altice, or would seek to enforce the proration requirement in N.J.A.C. 14:18-3.8 against Altice.

e)   Enter a permanent injunction enjoining Defendants in their official capacities from acting under color of state or local law to take any further action that would seek to enforce the November 13, 2019 Cease and Desist Order against Altice, or would seek to enforce the proration requirement in N.J.A.C. 14:18-3.8 against Altice.

f)   Award Altice costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

g)   Award such other and further relief as the Court deems just and proper.

DATED: December 13, 2019

/s/ Sidney A. Sayovitz
Sidney A. Sayovitz (SAS-0255)
Jeffrey T. LaRosa (JTL-4026)
Thomas N. Gamarello (TNG-6128)
SCHENCK, PRICE, SMITH & KING, LLP
220 Park Avenue

P.O. Box 991
Florham Park, NJ 07932

Howard J. Symons*
Matthew S. Hellman*
Devi M. Rao*
Samuel C. Birnbaum*
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001


*pro hac vice motions forthcoming


Attorneys for Altice USA, Inc.

## **CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2**

Plaintiff, by and through its attorneys, hereby certifies, on information and belief, that the matter in controversy is the subject of an action pending before the New Jersey Board of Public Utilities entitled *In the Matter of the Alleged Failure of Altice USA, Inc. to Comply with Certain Provisions of New Jersey Cable television act, N.J.S.A. 48:5A et seq. and The New Jersey Administrative Code, N.J.A.C. 14:18-1.1 et seq.*, BPU Docket No. CS181212288 (Motion for a Stay filed November 26, 2019) and is the subject of an appeal to the New Jersey Appellate Division, Docket No. A-001269-10 (filed November 27, 2019).


/s/ Sidney A. Sayovitz
Sidney A. Sayovitz

## **VERIFICATION**

The allegations contained within the Verified Complaint are true to the best of my knowledge, information and belief.  I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 12/13/19

Rebecca Baneman
Vice President – Legal, Litigation
Altice USA, Inc.